UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIGARE, LLC | | PLAINTIFF |
| vs. | Civil Action No. 2:17-CV-599 | |
| NORTH STAR HELICOPTERS, INC., ALLEN WALKER and ROBERT EWING | | DEFENDANTS |

*RECEIVED 2017 SEP -7 P 3:44 DEBRA P. HACKETT, CLK U.S. DISTRICT COURT MIDDLE DISTRICT ALA*

## COMPLAINT

Plaintiff Alligare, LLC ("Alligare") submits this complaint against defendants North Star Helicopters, Inc. ("North Star"), Allen Walker and Robert Ewing.

### Parties

1. Plaintiff Alligare is a limited liability company. Alligare's members are Welsh Holdings, Inc. ("Welsh") and ADAMA Agricultural Solutions Ltd. ("ADAMA"). Welsh is an Alabama corporation, and its principal place of business is in Alabama. ADAMA is a Delaware corporation, and its principal place of business is in North Carolina.

2. Defendant North Star Helicopters, Inc. is a Texas corporation, and its principal place of business is in Texas.

3. Defendant Allen Walker is an adult resident citizen of Texas.

- 1 -

37964333v1

4. Defendant Robert Ewing is an adult resident citizen of Texas.

## Jurisdiction

5. This Court has original jurisdiction over this matter under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

## Venue

6. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Alligare's claims occurred within this judicial district and a substantial part of the property that is the subject of this action is situated in this judicial district.

## Facts

### *The Businesses*

7. Alligare sells herbicides, pesticides and fungicides.

8. North Star applies herbicides.

9. Allen Walker was an equity owner of North Star.

10. Allen Walker served in a senior management capacity at North Star.

11. Robert Ewing is an equity owner of North Star.

12. Robert Ewing serves in a senior management capacity at North Star.

*The Contractual Relationship*

13. In 2009, Allen Walker executed on behalf of North Star an Alligare Credit Application (the "Credit Application") to establish an open account with Alligare through which North Star could purchase product from Alligare on credit.

14. An accurate copy of the Credit Application is attached as Exhibit 1.

15. The Credit Application provides that "[i]nvoices will be conclusively presumed to be accurate unless written notice of any error is given to Alligare, LLC within ten (10) days of receipt of each invoice."

16. The Credit Application provides that a "late charge of 1½ percent per month will be charged on all balances outstanding for thirty (30) days or more."

17. The Credit Application provides that "[i]n the event of default in payment, the Buyer shall be responsible for all costs of collection including, but not limited to, attorneys fees and court costs."

18. North Star and Alligare entered a consignment agreement (the "Consignment Agreement") with an effective date of January 14, 2012.

19. An accurate copy of the Consignment Agreement is attached as Exhibit 2.

20. Under the terms of the Consignment Agreement, Alligare placed certain quantities of its inventory (the "Consignment Inventory") at a North Star warehouse.

37964333v1

21. The Consignment Agreement required segregation of the Consignment Inventory from other inventory at North Star's warehouse.

22. Any products North Star removed from the Consignment Inventory were considered sold to North Star.

23. North Star would then provide Alligare a periodic accounting ("Inventory Reconciliation") of the amount of each Alligare product in the Consignment Inventory.

24. The periodic Inventory Reconciliations were to reflect Consignment Inventory as of the prior Inventory Reconciliation, the change in Consignment Inventory and ending Consignment Inventory.

25. Inventory Reconciliations were prepared by, or under the direction and instructions of, Allen Walker and Robert Ewing.

26. The Inventory Reconciliations were emailed from North Star to an Alligare employee located at Alligare's principal place of business in Alabama.

27. Alligare relied on the representations in the Inventory Reconciliation as the basis to invoice North Star for the portion of the Consignment Inventory North Star had used.

28. Accurate copies of emails from North Star to Alligare transmitting attached Inventory Reconciliations for a period from November 2015 through July 2016 is attached as Exhibit 3.

37964333v1

## *The False Representations*

29. Picloram is an herbicide that was part of the Consignment Inventory.

30. Each of the Inventory Reconciliations attached as part of Exhibit 3 represents that there are 4,845 or 4,844 units of Picloram in the Consignment Inventory.

31. The Picloram amounts North Star represented in the Inventory Reconciliations as remaining in the Consignment Inventory were false.

32. North Star had used all the Picloram prior to the dates of any of the false Inventory Reconciliations.

33. Alligare did not know that the Picloram amounts reflected in the Inventory Reconciliations were false.

34. Due to the false Inventory Reconciliations, Alligare was not paid for the Picloram North Star had used.

## *Unpaid Invoices*

35. Attached as Exhibit 4 are accurate copies of certain Alligare invoices (the "Invoices") for materials North Star purchased through the open account that the Credit Application established with Alligare.

36. The Invoices were sent to North Star on the date they indicate they were issued.

37. The payment due date on each of the Invoices has passed.

38. North Star has not paid Alligare the amounts reflected in the Invoices.

39. The total principal amount owed under the Invoices, exclusive of interest and late charges, is $341,052.94 (the "Principal Amount.").

### Claim No. 1: Breach of Contract by North Star

40. Alligare reasserts all the previous statements in this complaint.

41. Contracts, as described above, existed between Alligare and North Star.

42. North Star breached those contracts when it misrepresented Picloram inventory in its Inventory Reconciliations.

43. North Star also breached those contracts when it failed to pay the Invoices.

44. Alligare has suffered damages arising from North Star's contractual breaches.

### Claim No. 2: Fraud by North Star, Allen Walker and Robert Ewing

45. Alligare reasserts all the previous statements in this complaint.

46. The defendants repeatedly and intentionally misrepresented Picloram inventory in the Inventory Reconciliations.

47. Alligare relied on those misrepresentations.

48. Alligare suffered damages as a proximate cause of its reliance on the defendants' fraudulent misrepresentations.

### Claim No. 3: Negligent Misrepresentation by North Star, Allen Walker and Robert Ewing

49. Alligare reasserts all the previous statements in this complaint.

50. The defendants repeatedly misrepresented Picloram inventory in the Inventory Reconciliations.

51. Alligare relied on those misrepresentations.

52. Alligare suffered damages as approximate cause of its reliance on the defendants' negligent misrepresentations.

### Relief Sought

ACCORDINGLY, Alligare respectfully requests that the Court enter a judgment in Alligare's favor and against the defendants awarding Alligare the following relief:

(i) damages in an amount to be determined at trial that include but are not limited to the Principal Amount,

(ii) accrued late charges of 1.5% per month calculated from the due date of each of the Invoices until the Principal Amount is fully collected,

(iii) punitive damages,

(iv) pre-judgment interest,

(v) post-judgment interest,

(vi) attorneys' fees and costs and

(vii) any other relief that the Court deems proper.

Dated: September 5, 2017.

                                        Respectfully submitted,

                                        ALLIGARE, LLC

                                        By: /s/ Matthew A. Barley
                                        Matthew A. Barley
                                        BUTLER SNOW LLP
                                        One Federal Place, Suite 1000
                                        1819 Fifth Avenue North
                                        Birmingham, Alabama 35203
                                        (P) 205.297.2200
                                        (F) 205.297.2201
                                        (E) matt.barley@butlersnow.com

37964333v1

## Request for Service

Plaintiff Alligare, LLC requests that the Clerk immediately issue a summons pursuant to F.R.C.P. 4(e)(1) and A.R.C.P. 4(i)(2) for the following defendants to be served at the following addresses by certified mail:

North Star Helicopters, Inc.
963 Texas State Highway 63 West
Jasper, Texas 75951-8267

Daniel Allen Walker
1014 Creek Bend Drive
Jasper, TX 75951-2836

Robert Ewing
189 Holly Street
Jasper, TX 75951-6111

_____
Matthew A. Barley